UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEANNIE LEMIRE, INDIVIDUALLY ) <br> AND ON BEHALF OF ALL OTHERS SIMILARLY ) <br> SITUATED, ) <br>     Plaintiff ) <br> v. ) <br> ) <br> WOLPOFF AND ABRAMSON, L.L.P., ) <br>     Defendant ) <br> ) | CASE NUMBER: <br> 3:08cv249(JBA) <br><br><br><br><br><br><br> OCTOBER 1, 2008 |

**REPLY TO DEFENDANT'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

Plaintiff, Jeannie Lemire, moved for certification of the class on July 17, 2008.  On September 15, 2008, the defendant, Wolpoff and Abramson, L.L.P. ("Wolpoff"), submitted its opposition to that motion.  In its opposition, Wolpoff argues that the predominance, typicality, adequacy, and superiority requirements are not satisfied (evidently conceding numerosity and commonality).  As shown below, Wolpoff's arguments are without merit.

**ARGUMENT**

**I. The Class Claims Arise From the Fact That Wolpoff was not Permitted to Engage in Collection Activity in Connecticut, and Differences in the Collection Letters Do Not Defeat Predominance.**

Wolpoff argues that the predominance requirement is not satisfied, because some of the letters were sent to attorneys and because not all of the letters were the same.  These arguments, as detailed below,  ignores the essential nature of the claim, which depends not upon the contents of the letters but rather upon Wolpoff's failure to be licensed as a consumer collection agency with the Connecticut Department of Banking.

### A. The Fact That Some Letters Were Sent to Attorneys Does Not Defeat Predominance.

Wolpoff argues at pages 4-5 of its brief that letters sent to attorneys do not share a common fact pattern with the letters sent directly to consumers, and that predominance is therefore not satisfied. In her Motion, Plaintiff provided the Court with letters that were received by other consumers who were represented by Consumer Law Group. One of those letters was addressed to Richard Wegrzyniak in care of his attorney, Daniel Blinn. Wolpoff seeks to avoid certification by arguing that some letters were addressed to attorneys[1], that those claims differ from the Plaintiff's claim, and predominance is not satisfied. It cites *Kroplenicki v. Siegel,* 290 F.3d 118, 228 (2nd Cir. 2002), in support of its argument that letters sent to attorneys cannot be the basis of an FDCPA claim. That case is inapposite, because the claims asserted in that action differ significantly from those in the present case and, in any event, the language cited by Wolpoff was expressly limited as *dicta.*

In *Kroplenicki,* the defendants were a Connecticut attorney and her office manager. Connecticut attorneys are exempt from being licensed as a consumer collection agency, so that case did not involve a claim of unlicensed debt collection. Instead, the plaintiff alleged that her attorney spoke with one of the defendants, who agreed not to move for a default in a pending lawsuit without first calling plaintiff's attorney to discuss the matter. The plaintiff in *Kroplenicki* alleged that this was a misleading and deceptive act in violation of Section 1692e.

The Second Circuit never decided this question. Instead, it held that the district court lacked jurisdiction under the *Rooker-Feldman* doctrine, because the plaintiff was essentially attempting to circumvent a default judgment that entered in state court, and only the Supreme

---

[1] Wolpoff has not disclosed to the Court whether there are other letters besides the one sent to Wegrzyniak that were sent to consumers in care of their attorney.

2

Court has jurisdiction to disturb state court judgments. *Kroplenicki,* 290 F.3d at 228, *citing D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486-87, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 68 L. Ed. 362, 44 S. Ct. 149 (1923). Although the Second Circuit expressed doubt that allegations that a plaintiff's attorney was misled would give rise to an FDCPA claim, the court stated, "this is not an issue on which we need to rule today." 290 F.3d at 228.

In the present action, Plaintiff alleges that Wolpoff violated both Sections 1692e (deceptive conduct) and 1692f (unfair conduct). Wolpoff might have an argument that Wegrzyniak has no claim under Section 1692e if letters were sent only to his counsel. But, the concern expressed by the Second Circuit does not apply to the Section 1692f claim, because, although an attorney may be able to insulate a consumer from deceptive conduct, the unfair conduct of Wolpoff is quite another story. Specifically, as Judge Daly held in *Gaetano*, "[b]y failing to seek the proper license from the state banking commissioner, for example, the defendant deprived the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities." *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1415 n. 8 (D. Conn. 1990). The harm alleged by this 1692f claim extends beyond those relating to deceit or misrepresentation, and an attorney would be just as frustrated by the inability to have Wolpoff's qualifications reviewed by the Department of Banking as would a consumer.

Even if the Court were to determine otherwise, predominance is still not defeated simply because one class member's claim may differ from the rest. Rather than deny certification, the class should simply limit the class to those individuals who, like the Plaintiff, were the direct recipients of collection letters and exclude the handful whose letters were directed to legal

counsel.  The existence of a few, readily identifiable exceptions ought not to prevent a class of individuals whose claims are otherwise identical to the plaintiff.

### B.   Differences in the letters are immaterial and do not defeat predominance.

Wolpoff's second argument regarding predominance contained at pages 5-7 of its brief is somewhat confusing.  The heading of the second argument and the opening sentence both assert that the predominance requirement is not satisfied, because it would be necessary to review each letter individually to determine if the letter implies a threat to take action that cannot be taken.  Having staked out this position, it fails to support it with argument, but instead launches into a discussion on the merits of the case.

Specifically, Wolpoff does not argue that there are significant differences in the letters sent to the class members.  Indeed, the letter sent to the Plaintiff is substantively the same as those sent to Marie Brown, Tina Hoover, and Jeffrey Hoover.  The letter sent to Wegryzyniak is different, but upon closer inspection, the reason is obvious.  The other letters were the initial demands for payment, as evidenced by the fact that the letters inform the recipients that Wolpoff represents the creditor and they include the notice required by FDCPA § 1692g, which is required only in the initial written communication.  By contrast, the Wegryzniak letter was sent subsequent to the initial communication.

Instead of arguing that there are differences in the letters, Wolpoff instead argues that the letters were not deceptive because there is no threat to sue or to take other future collection action.  This is an improper attempt to oppose certification by arguing the merits of Plaintiff's claim.  *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974) ("[w]hether a suit should proceed as a class action is a decision made independently of whether a plaintiff has stated a cause of action or whether he can prevail on the merits").

In any event, Wolpoff's argument on the merits suffers from the same flaw as its first argument regarding letters addressed to attorneys: it ignores the claim under Section 1692f that it acted unfairly by collecting in Connecticut without being licensed. As previously stated, this claim differs from a claim brought under Section 1692e, because it does not require a showing of deceptive conduct. It is not necessary to establish that Wolpoff threatened to take some action that it was not permitted to take; it is sufficient to establish that it sent collection letters to the class members without bothering to be licensed. *E.g., Gaetano,* 774 F. Supp. at 1415.

Even if there were differences between the letters that would need to be examined by the court for purposes of addressing the Section 1692e claim, the predominance issue is still satisfied. "If there are genuinely common issues . . . identical across all the claimants, issues moreover the accuracy of which is unlikely to be advanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve these issues in one fell-swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *In re Methyl Tertiary Butyl Ether (MBTE) Products Liability Litig.,* 241 F.R.D. 435, 448 (S.D.N.Y. 2007) (quoting *Mejdrech v. Met-Coil Systems Corp.,* 319 F.3d 910, 911 (7th Cir. 2003))  *See also* . The extent to which unlicensed collection activities violate Section 1692f constitutes such a common issue that is identical to all class members. All of the claims are based upon the same legal theories based on identical facts, i.e., that an unlicensed collector violated the FDCPA by sending letters to Connecticut consumers. If Plaintiff prevails on that claim, then the class is entitled to relief, and the common questions in this case clearly predominate.

**II.   Plaintiff's Claim Is Typical, Because She Was Subjected to the Same Illegal Collection Activity as the Other Class Members.**

Wolpoff's argument against typicality, contained at pages 7-8 of its brief, is essentially the same as its first predominance argument. It hardly follows that the Plaintiff's claim is not

typical because Wolpoff sent a letter to class member in care of his attorney. Wolpoff also claims that the contents of the letters are different for each class member, but it does not support that contention. And, as demonstrated in the prior section, the contents of the letters are not relevant to the Section 1692f claim. Even if there were differences in the letters, Wolpoff has not shown how those differences would impact the fundamental inquiry in determining the typicality requirement, i.e., whether the named plaintiff's claim is sufficient similar to the claims of the class members to ensure that she can reasonably be expected to represent the interests of the absent class members. Wolpoff does not even pretend that any differences in the letters sent to the class members would deprive the class of that basic protection.

### III.     Wolpoff Has Failed to Support Its Argument Regarding Adequacy

Wolpoff asserts at pages 8-10 of its brief that Mrs. Lemire is a "professional plaintiff" who cannot be trusted to represent the best interests of the class. It asserts that she "incurred a debt that is still validly owing, and is attempting to raid the coffers of companies throughout Connecticut by using the federal system in such a way as to contravene the intent of the FDCPA." The only evidence Wolpoff musters to support these assertions is that Plaintiff and her husband have brought other suits in which they were represented by Consumer Law Group. [2]

Plaintiff submits that there is nothing untoward about her prior litigation or her relationship with Consumer Law Group. Paragraphs 4-5 of the complaint against Houston Funding (submitted by Wolpoff) include the allegation that she was an identity theft victim. Mrs. Lemire and her husband both had their identities stolen, and multiple accounts were opened in their names without their authorization  They retained Consumer Law Group to assist them,

---

[2] Wolpoff might have realized that there was no support for this argument if it had bothered to take any discovery; it failed to serve discovery requests until after the deadline for class certification.

and they have brought suit against several collectors that violated the FDCPA.  Wolpoff has not provided anything from the records of those prior suits to indicate some improper purpose, relationship, or scheme.  As this court held in rejecting a similar challenge to a plaintiff's adequacy based upon a prior relationship with his attorney, "the Court will not decline class certification simply because the plaintiff and his counsel have had professional dealings in the past without any other evidence suggesting some improper purpose for the suit." *Macarz,* 193 F.R.D. at 52.

### IV. Wolpoff's Claimed Net-Worth Does Not Make Class Action Adjudication Inferior to Other Means to Adjudicate the Controversy.

Wolpoff's final objection to certification, contained at pages 10-12 of its brief, is that a class action is not the superior means of adjudicating the controversy.  In support of this argument, it claims, without providing any documentation or evidence, that it has a negative net worth.  From this, it asks the Court to conclude that a class action is inferior to other means to adjudicate the recovery, because statutory damages are limited to one-percent of its net worth which, it contends, would be "zero."  This argument fails, because Wolpoff has failed to establish its negative net worth, which is very much under contention.  Even if the Court were to determine, after full discovery and examination of the facts, that Wolpoff had a minimal or negative net worth, a class action would still be superior to denying the certification motion.

#### A. Wolpoff has not demonstrated that it has a negative net-worth, and that contention is disputed.

In asserting that it has a negative net worth, Wolpoff states at page 11 of its brief that it has provided, pursuant to a confidentiality agreement, a certified financial statement.  It also states that the defendant merged with another firm named Mann Bracken effective July 1, 2008 – well

7

after Wolpoff's disclosure, and just 16 days before Plaintiff filed her motion for certification. No financial information has been provided concerning the merger, the negotiations, or the finances of the merged firm.  It also did not disclose any other information concerning its finances to the Plaintiff, even though this information was sought in written discovery and not objected to.   *See* Defendant's Compliance with Plaintiff's First Set of Interrogatories and Requests for Production dated June 18, 2008, Responses Nos. 12, 13,  & 14, attached to Joshua Cohen Affidavit (submitted with Plaintiff's Motion for Certification)

Should the case be certified, the parties will engage in further discovery on this damages-related issue, which, for the reasons stated in the next section, relates more to the class's damages claim than to the certification question.  As one federal court has noted, "[w]hat [the defendant's] actual net worth is would be a matter for trial, should the [class] claims proceed to a damages phase." *Warcholek v. Medical Collections System, Inc.,* 241 F.R.D. 291, 295 (N.D. Ill. 2006)(certifying class notwithstanding defendant's claim of negative net worth of minus $137,122.42).  In light of the lack of any evidence supporting Wolpoff's claimed net worth, its failure to include information concerning the net worth of the merged entity, its failure to provide any information beyond a balance sheet in response to discovery requests, and the substantial disagreement between the parties, class certification should not be denied at this time.  *See also Caulton v. Merchant's Credit Guide Co.,* 2007 WL 625457,*3-4 (N.D.Ill. 2007) (class certification appropriate where plaintiff disputed defendant's assertion of negative net worth, subject to revisiting under *Mace v. Van Rue Credit Corp.* standard, discussed below).

**B. Even if Wolpoff has only minimal or negative net worth, a Class Action is still superior to other means of resolving the controversy.**

Although Plaintiff disputes the claim that Wolpoff has a negative net worth, she acknowledges that the total recovery available to the class members will be significantly less than the amount recoverable in an individual action under the FDCPA. Even assuming, *arguendo,* that any recovery would be *de minimis,* most courts considering the question have found the superiority requirement to be satisfied. Although a few courts have held otherwise, the majority of courts considering this question have agreed with the reasoning of the Seventh Circuit in *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997) in holding that the availability of only *de minimis* statutory damages does not defeat certification if the other requirements are satisfied.. *See e.g. Macarz,* 193 F.R.D. at 55; *Weber v. Goodman,* 9 F. Supp. 2d 163, 170 (E.D.N.Y. 1998); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132, 140 (E.D. Pa. 2006);.*Seeger v. Aid Associates, Inc.,* 2007 WL 1029528, *7 (E.D. Wis. 2007). *See also Amchem Prods. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231 (1997) (quoting *Mace's* holding that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 566 (6th Cir. 2007)(" Such a small possible recovery would not encourage individuals to bring suit, thereby making a class action a superior mechanism for adjudicating this dispute"). Several of these cases have certified classes despite a defendant's claim that it had a negative net worth. *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 546 (N.D. Cal. 2005); *Caulton,* 2007 WL 625457,*3-4; *Barkouras v. Hecker,* 2006 WL 3544585, *3  (D.N.J. 2006).

This court previously held that a class action claim under the FDCPA satisfied the superiority requirement even though the class members would receive only $50 were the case to proceed as a class but would have the opportunity to seek $1,000 if the claims were pursued individually.  *See Macarz,* 193 F.R.D. at 54-57.  The court quoted the Seventh Circuit's holding in *Mace,* 109 F.3d at 344:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem b aggregating the relatively paltry potential reveries into something worth someone's (usually an attorney's) labor.
>
> True, the FDCPA allows for individual recoveries of up to $1,000.  But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case.  These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Id.; see also Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 953 (7th Cir.2006); *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 546 (N.D. Cal. 2005).  The District Court for the Eastern District of Wisconsin similarly noted that it is highly unlikely that class members know of and would individually pursue their FDCPA claims:

> Certainly, a class action would be more effective in informing putative plaintiffs of their rights after having received the defendant's form letter.  Undoubtedly, most of these persons are unaware that the letter they received years ago violated the FDCPA, and if any are aware, few would pursue litigation.  The defendant is well aware of this fact.  The defendant implicitly concedes as much for if it was not true, it would be entirely illogical for the defendant to oppose certification of the class and rather wish to pursue a path that could potentially expose it to nearly six million dollars of liability . . ."

*Seeger v. Aid Associates, Inc.,* 2007 WL 1029528 at *7.   The court in *Seeger* also relied upon the fact that only three class members out of 6,000 had undertaken legal action as "strong evidence that likely no other potential class members would otherwise pursue relief for the defendant's misrepresentation." *Id.* at *8.  The same is true in the present action; the Affidavit of Joshua Cohen established that virtually none of the class members in this case have brought suit for the violations alleged by the plaintiff.  Wolpoff did not claim otherwise in its opposition.

10

Consequently, Wolpoff's argument that pursuit of individual claims is a superior means of resolving the controversy is based upon the faulty premise that individuals know about their claims. But, if the class is certified, the class members would receive notice describing the case and the claim. They could elect to exclude themselves from the class, thereby preserving their right to pursue the full measure of statutory damages. As one federal court has observed:

> To the extent that any putative class member thinks he or she would rather foot the cost of litigation alone so as not to have to share his or her $1,000 recovery, certification of the putative class under Rule 23(b)(3) is tailored to allow the putative class member to do so. The court will direct that Rule 23(b)(3) notice to class members explain their right to opt out of the class and pursue individual litigation, and that the notice clearly explain the difference in the size of their recovery should they choose to pursue recovery as part of this class.

*Hernandez v. Midland Credit Management, Inc.,* 236 F.R.D. 406, 414-415 (N.D. Ill. 2006)(citations omitted). *See also Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132, 140 (E.D. Pa. 2006)(any concern about the financial detriment to individual class members through class action litigation is sufficiently redressed through the Rule 23 opt-out procedure, which leaves up to each person falling within the class definition the methodological decision of how to pursue potential claims"). This court made a similar observation in rejecting the defendant's argument against superiority in *Macarz,* holding:

> First, under [Rule 23(c)(2)(B)], members of class actions maintained under 23(b)(3) who determine that their interests are better served by an individual action, and provide timely notice of this election to the Court, will be excluded from the class. . . This "opt-out" provision is designed to ensure that even in a class action that meets all the prerequisites of Rule 23, the individual interest is respected.

*Id.;* 193 F.R.D. at 55. *See also Barkouras v. Hecker,* 2006 WL 3544585, *3 (D.N.J. 2006)(defendant's concern that the real motive of the class action was to notify class members of existence of claims so that they could opt-out was not a reason to argue the inferiority of class certification).

11

Wolpoff's preferred alternative would be to not certify the class, leaving the class members ignorant of their claims. That is not a superior remedy – it is no remedy at all. Congress intended the one-percent provision of the FDCPA to provide protection for small businesses to prevent them from being forced to liquidate their companies in order to satisfy an award. *See e.g., Sanders v. Jackson,* 209 F.3d 998, 1000-01 (7th Cir. 2000). "However, it surely was not intended as a loophole for defendants to avoid suits altogether." *Barkouras,* 2006 WL 3544585 at *3.

A class action is also superior to this "alternative," even if there is no recovery whatsoever for the class, because it would have the necessary deterrent effect upon Wolpoff and other collectors. Failure to certify a class would essentially give the defendant a "pass" for violating the statute. "[C]lass actions serve a deterrent function independent of the amount each class member would recover as damages." *Nichols v. Northland Groups, Inc.,* 2006 WL 897867, at *11 (N.D.Ill. 2006) (holding possibility of *de minimis* recovery for FDCPA class members does not justify denying class certification when other Rule 23 prerequisites are met, even when individual claims would result in greater reward).

Assuming, *arguendo,* that class members suddenly discovered that they have claims and rush to court to enforce their rights, that still would not demonstrate that class actions are inferior to adjudication by individual action. If Wolpoff's net worth is negative, no Plaintiff could recover against them, either as a class or individually." *Barkouras,* 2006 WL 3544585 at *3. Additionally, "[e]ven if most members of the proposed classes filed individual suits in the absence of class action certification, thereby substantially fulfilling the deterrent objective of the FDCPA, this volume of filings would lead to a host of alternative problems, including judicial congestion, the incurrence of excessive litigation expenses, and administrative delays." *Jordan v. Commonwealth,* 237 F.R.D. at 140. *See also Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.

12

1968), *cert. denied*, 395 U.S. 977 (1969)(even if the class members had the knowledge and desire to each bring their own claim, the result would be a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake").

Accordingly, even if the class members were to obtain only a *de minimis* or no recovery for statutory damages, a class action would still be the best means of adjudicating the controversy. Certifying the class would deter Wolpoff from violating the FDCPA, inform the class members of their rights (including the right to opt-out), and it would provide a means for them to vindicate those rights. It would also permit the plaintiff to pursue her claim that Wolpoff has assets and that some measure of statutory damages is recoverable. Wolpoff's alternative means of adjudicating the controversy, i.e., the pursuit of individual actions, is fanciful and illusory, as demonstrated by the failure of the class members to assert this claim. The superiority requirement is satisfied.

## CONCLUSION

For the reasons set forth herein and in Plaintiff's original Memorandum of Law, she respectfully request that this action be certified as a class action under Fed. R. Civ. P. 23.

        PLAINTIFF, JEANNE LEMIRE, Individually,
        And On Behalf Of The Class,


    By:  _/s/Daniel S. Blinn_____
        Daniel S. Blinn, Fed Bar No. ct02188
        dblinn@consumerlawgroup.com
        Consumer Law Group, LLC
        35 Cold Spring Rd., Suite 512
        Rocky Hill, CT  06067
        Tel. (860) 571-0408
        Fax. (860) 571-7457

                                    Brian L. Bromberg, Fed Bar No. ct26967
                                    brian.bromberg@brianbromberg.com
                                    Bromberg Law Office, PC
                                    40 Exchange Place, Suite 2010
                                    New York, NY 10005
                                    Tel (212) 248-7906
                                    Fax (212) 248-7908


## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 1st day of October, 2008, a copy of the foregoing Memorandum of Law in Support of Motion for Certification of the Class was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                      ____/s/Daniel S. Blinn_____
                                      Daniel S. Blinn